**UNITED STATES of America**

v.

**WITCO CORPORATION.**

Civ. A. No. 94–CV–0662.

United States District Court,
E.D. Pennsylvania.

Sept. 28, 1994.

---

Brud Rossmann, U.S. Dept. of Justice, Environmental and Natural Resources Div., Jonathan A. Marks, U.S. Dept. of Justice, Environmental Enforcement Section, Washington, DC, for U.S.

Michael R. Lazerwitz, Charles F. Lettow, Christopher G. Smith, Cleary, Gottlieb, Steen & Hamilton, Washington, DC, for Witco Corp.

## MEMORANDUM

JOYNER, District Judge.

Third Party Defendant Elf Atochem North America has moved this Court to dismiss Defendant/Third Party Plaintiff Witco Corporation's Third Party Complaint against it for failure to state a claim upon which relief may be granted.

This case arises under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C.A. §§ 9601–75 (1983 & Supp.1994). The facts relevant to this Motion are as follows. In 1983, the United States Environmental Protection Agency (EPA) placed the Myers Property of Franklin Township, New Jersey (the Site) on its National Priority List. The Site is contaminated with many hazardous materials, some of which were released in the course of manufacturing DDT during World War Two, others of which were released during production of anhydrous aluminum chloride, dried copper sulfate and dried magnesium sulfate between 1953 and 1959. Elf's predecessor in interest produced DDT during World War Two, and Witco's predecessor in interest produced anhydrous aluminum chloride, dried copper sulfate and dried magnesium sulfate between 1953 and 1959.

The United States sued Elf under CERCLA in 1991. The next year, the two parties entered into a Consent Decree whereby Elf agreed to undertake certain remediations and pay certain of the United States' response costs. In exchange, the United States dismissed its complaint against Elf.[1] In this action, the United States has sued Witco for all unreimbursed response costs incurred by it for response actions related to the Site, and for a declaratory judgment that Witco is liable for all response costs not otherwise provided for pursuant to the Consent Decree that may be incurred by the United States. In response, Witco has filed a third party complaint against Elf seeking contribution for any costs for which Witco is held liable to the United States. It is this last piece of litigation that is addressed in this Memorandum.

## STANDARD

The law is clear that in considering a motion to dismiss for failure to state a claim upon which relief may be granted, the courts must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir.1990). In ruling upon such a motion, the Court must accept as true all of the allegations in the pleadings and must give the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Lane Co.,* 906 F.2d 100, 103 (3d Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

## CERCLA

■ In response to widespread concern over the improper disposal of hazardous wastes, Congress enacted CERCLA in 1980 and the Superfund Amendments and Reauthorization Act (SARA) in 1986 to facilitate the prompt clean-up of hazardous waste sites. *In re Bell Petroleum Servs., Inc.,* 3 F.3d 889, 894 (5th Cir.1993); *United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 257–58 (3d Cir.1992). CERCLA's primary purpose is remedial: to clean up hazardous waste sites. *Polcha v. AT & T Nassau Metals Corp.,* 837 F.Supp. 94, 96 (M.D.Pa. 1993). Because it is a remedial statute, CERCLA must be construed liberally to effectuate its two primary goals: (1) enabling the EPA to respond efficiently and promptly to toxic spills, and (2) holding parties responsible for releases liable for the costs of the cleanup. In that way, Congress envisioned the EPA's costs would be recouped, the Superfund preserved, and the taxpayers not required to shoulder the financial burden of nationwide cleanup. *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192 (2d Cir.1992) (citing *United States v. Aceto Agric. Chems. Corp.,* 872 F.2d 1373, 1377 (8th Cir.1989)); *City of New York v. Exxon Corp.,* 744 F.Supp. 474, 485 (S.D.N.Y.1990).

As a means of encouraging settlements with the government, SARA provides that a "person who has resolved its liability to the

---

1. Elf has since sued both the United States and Witco, in the related case numbered 92–7458, for contribution for amounts it has agreed to pay under the Consent Decree.

United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C.A. § 9613(f)(2). The purpose behind this section is to "promote timely, voluntary settlements with the EPA and the states, and effectuate cleanup of hazardous wastes." *Akzo Coatings, Inc. v. Aigner Corp.*, 803 F.Supp. 1380, 1383 (N.D.Ind.1992). Accordingly, the section "insulates a potentially liable party who has settled a CERCLA action with the United States from liability to a potentially responsible party who has not settled" so the settling party need not pay twice. *Id.* Many courts have held that this section acts as a stick to non-settling parties and as a carrot to induce settlement. *Id.; United States v. Pretty Prods. Inc.*, 780 F.Supp. 1488, 1494 (S.D.Ohio 1991); *United States v. Union Gas Co.*, 743 F.Supp. 1144, 1152 (E.D.Pa.1990).

## ANALYSIS

The theory behind Elf's Motion to Dismiss is that as a party that settled its claims with the EPA, it is immune from this suit for contribution under § 113(f)(2). Elf asserts that it is entitled to § 113's protection by virtue of being a Settling Defendant, but also under the terms of the Consent Decree itself. The Consent Decree reads: "the Parties hereto agree that the Settling Defendant is entitled, as of the effective date of this Consent Decree, to such protection from contribution actions or claims as is provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2)." Consent Decree § XII, ¶ B.

■ Many courts have already faced the issue raised by Elf. The analysis adopted by federal courts is to consider whether the subject matter of the settlement and the contribution action are the same. This is done by comparing the particular hazardous substances at issue, the time frames covered, and the costs of cleanup. *Union Gas Co.*, 743 F.Supp. at 1153–54 (blanket immunity from contribution "would create a situation where persons settling with the United States who are later responsible for an unrelated act of improper disposal of hazardous waste would find themselves immune from

liability under CERCLA or state laws—a result clearly not envisioned by CERCLA"). If the subject matters are the same, the contribution action is properly dismissed.

In *Akzo*, for example, the Court held that where the settlement did not identify particular hazardous substances, both the consent decree and the action encompassed all hazardous substances found at the facility, and therefore covered the same subject matter. 803 F.Supp. at 1384. Likewise, where the complaint and the consent decree alleged release of hazardous substances between 1972 and 1986 and both sought money to "abate the contamination," the subject matters were the same. *Id.*

In contrast, when "disposal of hazardous wastes is continuing, a settlement may purport to cover a limited time period only. In such a situation, a claim for contribution may survive a settlement *to the extent* it seeks contribution for disposals occurring outside of the settlement time period." *Pretty Prods.*, 780 F.Supp. at 1494–95 n. 4. Similarly, where a complaint against a non-settling defendant sought all costs of removal or remediation under the consent decree *as well as* "[a]ll other necessary costs of response at the Site incurred by [the Settling Defendant] including costs of response in excess of the Trust Fund amount," the Court held that this catch-all phrase could cover costs not within the subject matter of the consent decree, and so declined to grant summary judgment. *Allied Corp. v. Frola*, 730 F.Supp. 626, 638 (D.N.J.1990).

■ Elf asserts that the United States originally sought Elf to perform all the EPA's remedial activities at the Site and pay all past and future response costs incurred by the EPA at the Site. In their Settlement, the EPA and Elf agreed that Elf would pay all but some of the EPA's past response costs, pay the first part of the EPA's future response costs and perform certain remedial work at the Site. In exchange, the EPA dismissed its complaint against Elf. Now, the EPA is suing Witco for all unreimbursed response costs incurred by the United States at the Site and a declaratory judgment that Witco is liable for all response costs not

otherwise provided for pursuant to the Consent Decree. Elf asserts, therefore, that the subject matter covered in the Consent Decree is the same subject matter at issue in this litigation, except that the United States seeks relief against Witco now.

Witco, in contrast, asserts that there is a gap between the subject matter covered in the Consent Decree and the subject matter of the present lawsuit. It grounds this argument in an earlier opinion of this Court that denied summary judgment on its behalf against the United States. In that opinion, we held that the United States could not recover oversight costs from Witco under the ruling of *United States v. Rohm & Haas Co.,* 2 F.3d 1265 (3d Cir.1993). However, we declined to grant summary judgment entirely, and held that we were "unable to conclusively find that the only remedy sought by the government's complaint is the recovery of oversight costs, that it has already received a complete recovery from Elf Atochem, or that it cannot recover anything further from Witco in this action." *United States v. Witco Corp.,* 853 F.Supp. 139, 144 (1994).

Witco's argument is that if the United States can recover anything from it, then that recovery is of necessity not covered in the Consent Decree. Witco argues, "[i]f, and to the extent that, the Consent Decree does not provide all the relief to which the United States is entitled, a gap exists, the Consent Decree does not address that matter, and Elf Atochem correspondingly lacks contribution protection." Witco Brief at 4. We do not accept this part of Witco's reasoning because it is too narrow and does not take into consideration the nature of a settlement.

When parties settle a dispute before trial, there is necessarily compromise. Both sides give up certain rights they allege they hold. One side agrees to accept less than it asked for, one side agrees to give more than it claimed was due and both agree not to litigate. In the litigation by the United States against Elf, the United States sought *all* past and future payments and performance of *all* its remediation. As settlement, Elf agreed to pay most of the past costs, some of the future costs and perform much of the remed-

iation. In exchange, the United States dropped its suit against Elf. Contrary to Witco's argument, therefore, even though the "Consent Decree does not provide all the relief to which the United States is entitled," no "gap [necessarily] exists [that] the Consent Decree does not address." By its own terms, the Consent Decree covers the entire subject matter of the original complaint, even if it does not provide all the relief requested.

■ Nonetheless, the United States' complaint against Witco appears to cover more than the complaint against Elf did. The United States seeks all unreimbursed response costs incurred by the United States *and* "a declaratory judgment for the United States that the defendant is liable for all response costs *not otherwise provided for pursuant to the Atochem settlement* which may be incurred by the United States in the future at the Site." When deciding a motion to dismiss, a court can only dismiss a claim if there is no set of facts that show a right to relief by plaintiff. This second claim for relief by the United States precludes us from finding that the United States only seeks relief within the ambit of the Consent Decree. As with our earlier decision in this case, "in the event that subsequent discovery reveals that the only costs to be recovered by the government in this action are [within the subject matter of the Consent Decree,] the defendant is free to move for summary judgment."