EFCO CORP., Individually and on Behalf of Others Similarly Situated, Plaintiff,

v.

IOWA ASSOCIATION OF BUSINESS AND INDUSTRY, Defendant.

No. 4:06–cv–00068–JEG.

United States District Court, S.D. Iowa, Central Division.

Aug. 23, 2006.

David L. Charles, Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P., Mark McCormick, Belin Lamson McCormick Zumbach Flynn, Des Moines, IA, for Plaintiff.

Russell L. Samson, Mollie Pawlosky, Dickinson Mackaman Tyler & Hagen PC, Des Moines, IA, for Defendant.

## ORDER

GRITZNER, District Judge.

This matter comes before the Court on the motion of Plaintiff EFCO Corporation (EFCO) to remand the case to state court. EFCO is represented by David Charles and Mark McCormick. Defendant Iowa Association of Business and Industry (ABI) is represented by Russell Samson and Mollie Pawlosky. Neither party has requested a hearing, and the Court finds

the matter is fully submitted and ready for ruling.

## SUMMARY OF MATERIAL FACTS

ABI, formerly known as the Iowa Manufacturers Association, is an Iowa nonprofit corporation and trade association whose members include approximately 1,500 Iowa businesses. EFCO has been an ABI member since 1943.

In 1946, ABI began a program under which eligible members could obtain group life, long-term disability, medical, and other types of insurance coverage. The group policy was issued in ABI's name and underwritten by Banker's Life Company, the predecessor entity of Principal Mutual Life Insurance Company. EFCO was listed as a "Participating Member" on the original 1946 policy, and its affiliated entities later participated in the ABI program. According to ABI, EFCO and its affiliates ceased participation in the ABI program effective June 30, 1995.

Under the group policy, Principal issued separate policy documents to each Participating Member. EFCO claims these individual group contracts were administered by Principal through an agency. According to EFCO, ABI members had direct contact with Principal though the billing process, which did not go through ABI, and through dividend payments made directly to ABI members while Principal was a mutual company. EFCO also claims ABI required Principal to pay a fee to ABI for its sponsorship of the program, computed as a percentage of premiums paid by ABI members.

EFCO further contends that employees of some ABI members may have contributed to premiums for certain kinds of coverage. Although ABI claims it does not know if employees paid for portions of the premiums, it lists at least two policy provisions under which that may have occurred and notes that some ABI member compa-

nies would be subject to the requirements of the Consolidated Omnibus Budget Reconciliation Act (COBRA) and Iowa Code section 509B.3. Both statutes require employers to provide continuing insurance coverage in certain instances at the employee's expense.

On March 31, 2001, Principal's board of directors adopted a plan of conversion from a mutual holdings company to a publicly-traded stock company, Principal Financial Group, Inc. The appropriate regulatory bodies approved the demutualization effective October 2001. In accordance with its conversion plan, Principal distributed stock to policyholders who held an eligible policy or contract from March 31, 2000, through the date of demutualization. Principal determined ABI was such an eligible policyholder of Policy No. –275 and distributed 870,393 shares of Principal stock. ABI subsequently received dividends on that stock.

The stock and dividends were issued in ABI's name. Investment consultants retained by ABI advised the organization to cash the dividends check, sell the stock, and invest the proceeds pursuant to a diversified investment plan. The proceeds are the subject of the present litigation: EFCO claims the proceeds are the property of ABI members who participated in the ABI program and paid Principal for their group insurance coverage. EFCO also claims a portion of the proceeds may be attributable to contributions from individual employees.

The Employee Benefits Security Administration (EBSA) of the United States Department of Labor (DOL) has contacted ABI about the proceeds. The EBSA claims the compensation ABI received from Principal's demutualization is an ERISA plan asset and should be turned over to a third party. Although ABI disagrees with the EBSA, it placed the pro-

ceeds in a trust in light of the EBSA's concerns.

ABI filed a class action complaint in this court on May 13, 2004, seeking a declaratory judgment that it is not required to distribute stock proceeds to ABI members, and that the proceeds are not ERISA plan assets or common law trust assets. The Court dismissed that action for lack of subject matter jurisdiction in an order entered February 15, 2005. The Secretary of the DOL filed a motion to intervene in that previous case. *See Iowa Ass'n of Bus. and Indus. v. EFCO Corp.*, No. 4:04–cv–40270, 2005 WL 425308 (S.D.Iowa Feb. 15, 2005).

The present action was originally filed in the Iowa District Court for Polk County on January 30, 2006. EFCO seeks to represent itself and a class of all ABI members similarly situated; that is, current and former ABI members who paid premiums on group insurance from Principal under the ABI program.[1] EFCO claims this group includes over 1,000 current and former ABI members who are entitled to the demutualization proceeds. If the Court grants EFCO's requested relief and rules that the proceeds are property of the class, EFCO asks the Court to retain jurisdiction to divide the proceeds among class members and determine what amounts, if any, should be distributed to the employees of ABI member companies who have ERISA rights based on contributions to group policy premiums.

The state court petition pleads three claims, under theories of contract, fiduciary duty, and constructive trust. ABI denies the merits of each of the claims and states that all claims are preempted by ERISA and must be heard in federal court.

In its contract claim, EFCO alleges the ABI members were third-party beneficiaries of the ABI program established between ABI and Principal because ABI initiated the program to enable its members to purchase insurance at group rates and the proceeds were calculated based upon net profits on policies held by ABI members. Therefore, EFCO argues, the proceeds were intended for those who paid the premiums that produced the net profits. Since ABI made no contribution to the profits beyond coverage for its own employees, and Principal (the mutual company) made periodic distributions from surplus directly to the ABI members, EFCO claims that ABI members are entitled to the proceeds.

In its fiduciary duty claim, EFCO asserts ABI had a duty to account to its members for the proceeds attributable to their particular group coverage and a fiduciary obligation to transfer the proceeds to those members, subject to any ERISA rights of individual employees who contributed to premiums. EFCO provides three possible sources for the fiduciary duty underlying this claim: (1) ABI is a fiduciary to its members by virtue of their membership; (2) ABI was an agent for its members in its sponsorship of the ABI program; and (3) to the extent the ABI program is subject to ERISA, ABI was the fiduciary of an ERISA plan.

Finally, EFCO claims ABI's retention of the proceeds would unjustly enrich ABI to the detriment of its members and therefore ABI holds the proceeds in a constructive trust for the members.

EFCO petitioned the state court for class certification (with EFCO as class representative); a judgment that the proceeds are property of the class, subject to any ERISA rights of individual employees; an order retaining jurisdiction to establish procedures for determining how to distrib-

---

1. The class has not been certified, so the discussion below refers only to EFCO.

ute the proceeds among class members "including appropriate distribution of any amounts that subsequently may be determined to be ERISA plan assets;" and an order allowing class members attorney fees and costs.

On February 23, 2006, ABI removed the case based on this Court's federal question jurisdiction. 28 U.S.C. § 1441. ABI asserts that removal is proper because EFCO's fiduciary duty claim arises under ERISA, a federal statute. ABI also claims EFCO made a business decision to discontinue coverage from Principal under the ABI program and thus voluntarily forfeited its policyholder status and any accompanying rights, including rights to the demutualization proceeds.

EFCO filed a motion to remand on March 1, 2006. EFCO maintains that ABI's first action, filed in this court, and its present action, filed in state court, are within the jurisdiction of the Iowa district court pursuant to Iowa Code section 602.6101. That section provides general jurisdiction in the Iowa district courts for civil actions and proceedings unless "exclusive or concurrent jurisdiction is conferred upon some other court, tribunal, or administrative body." Iowa Code § 602.6101. ABI resists EFCO's motion and contends that this Court has exclusive jurisdiction over certain portions of the present action under 29 U.S.C. § 1132(e) (granting the federal district court exclusive jurisdiction over certain ERISA actions).

## APPLICABLE LAW AND DISCUSSION

### I. REMOVAL JURISDICTION

A defendant may remove a state action to the federal district court where the case is pending if the action is one over which the federal court has original jurisdiction. 28 U.S.C. § 1441(a). When such original jurisdiction is premised upon "a claim or right arising under the Constitution, trea-

ties or laws of the United States," the case is removable regardless of the defendant's citizenship or residence. § 1441(b). If original jurisdiction is based on other grounds, removal is only proper if no defendant is a citizen of the state where the action is brought. *Id.* Defendant ABI is an Iowa citizen; therefore, the propriety of removal here turns on whether the Court has original jurisdiction based on a question of federal law. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

"Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 207, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). This means a case arises under federal law for jurisdictional purposes if the face of the complaint discloses a federal question. *Id.* A federal issue that appears as an anticipated defense "normally does not create statutory 'arising under' jurisdiction." *Id.*

Under an exception to the well-pleaded complaint rule, certain state law claims can be removed if the cause of action is completely preempted by a federal statute. *Id.* (citing *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003)). A federal statute carrying the power of complete preemption wholly displaces a claim couched in state law, and such a claim is considered to be one arising under federal law. *Id.* at 207–08, 124 S.Ct. 2488. ERISA is one statute with the aforementioned preemptive effect. *Id.* at 208, 124 S.Ct. 2488. ABI argues both that EFCO's petition states a federal cause of action

within the meaning of the well-pleaded complaint rule and that at least one of the three claims is completely preempted by ERISA. These contentions are considered and analyzed separately.

 As the party opposing remand, ABI bears the burden to establish federal subject matter jurisdiction. *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002). In considering the parties' arguments, the Court is mindful that remand is the proper course of action if federal jurisdiction is in doubt, as removal jurisdiction implicates significant federalism concerns and must be construed strictly. *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir.1994) (citing *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir.1993)).

## A. The Well–Pleaded Complaint Rule

Under the well-pleaded complaint rule, the Court must scour the face of the complaint for the presence of a federal question. An examination of each of the claims is therefore a beneficial starting point. The first claim sounds in contract: EFCO asserts members who hold or held group contracts with Principal under the ABI program are the true owners of the proceeds as third-party beneficiaries of the policy contract between Principal and ABI that created the ABI program. The second claim asserts that ABI's retention of the proceeds is an action in contravention of its fiduciary obligations. EFCO claims these fiduciary obligations arise from three possible sources: (1) ABI has a fiduciary relationship to its members; (2) ABI was an agent for its members by sponsoring the ABI program; and (3) "to the extent

the ABI program was subject to [ERISA] ... ABI was the fiduciary of an ERISA plan." The third and final claim alleges that ABI's retention of the proceeds would unjustly enrich ABI and therefore it holds the proceeds in a constructive trust for eligible ABI members.

Only the second of these claims facially invokes a federal statute. According to ABI, including ERISA as a source of the alleged fiduciary duty constitutes the assertion of a federal claim on the face of the state court petition such that the claim "arises under" a federal law and is properly removable to this Court under 28 U.S.C. § 1441(b).

EFCO requests this Court remand the case and claims removal was improper because the state court petition does not include a federal cause of action within the meaning of the well-pleaded complaint rule. Despite the inclusion of ERISA in the second claim, EFCO asserts that it has not pled a federal claim because ERISA is only one of three theories of its claim and therefore the claim cannot be said to "arise under" federal law per 28 U.S.C. § 1441(b). In addition, EFCO claims any ERISA issue would arise in the context of employees of the ABI members asserting their individual ERISA rights, whereas EFCO seeks only to represent the employer-members and obtain an adjudication that the proceeds are not the property of ABI. It has requested that any employee ERISA rights be adjudicated in a separate and subsequent proceeding and states that it does not purport to represent the interests of ABI members' employees.[2]

A determination of this Court's removal jurisdiction under the well-pleaded com-

---

**2.** The Court is fully cognizant that if remanded to state court, related claims by employees under the provisions of ERISA may well bring the matter into federal court for the third time, and that this complex turn of events may be the result of creative pleading by EFCO at this juncture. But this Court must focus on the matter currently at bar, with future possibilities of interest but not now controlling.

plaint rule thus turns on whether a claim for fiduciary duty arises under federal law if a federal statute is one of three possible bases of the alleged fiduciary duty. EFCO claims the presence of alternative theories indicates that the resolution of its claim does not depend on a construction of federal law. *See Mulcahey,* 29 F.3d at 151 (when "state law creates the cause of action ... federal question jurisdiction depends on whether the plaintiff's demand 'necessarily depends on resolution of a *substantial* question of federal law'") (quoting *Franchise Tax Bd.,* 463 U.S. at 28, 103 S.Ct. 2841). ABI claims EFCO's interpretation is too narrow and would mean "as long as a plaintiff argued theories that did not rely upon federal law, the plaintiff could allege federal causes of action that would not be removable."

The Supreme Court addressed a similar question, though regarding patent jurisdiction, under 28 U.S.C. § 1338 in *Christianson v. Colt Industries,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Given the analogous application, some detailed discussion of this case is required.

In *Christianson,* a former Colt employee started his own company selling a competing product (M–16 rifle parts) using information that Colt considered proprietary. *Id.* at 803–04, 108 S.Ct. 2166. The former employee brought suit against Colt, alleging claims of antitrust and intentional interference with a business relationship as a result of a notice Colt sent to the plaintiff's customers informing them that the plaintiff was illegally misappropriating Colt's trade secrets and urging them to discontinue business relations. *Id.* at 805, 108 S.Ct. 2166. Colt countersued, and subsequent summary judgment proceedings focused on the validity of Colt's patents for the parts in question. *Id.* at 806, 108 S.Ct. 2166. The district court granted plaintiff's summary judgment and invalidated nine of Colt's patents. *Id.* The Fed-

eral Circuit and Seventh Circuit Courts of Appeals each denied that they possessed jurisdiction to hear the appeal, but the Federal Circuit eventually decided the merits of the case in the interest of justice. *Id.* at 806–07.

The Supreme Court thus had to determine whether the district court's jurisdiction rested on 28 U.S.C. § 1338, which grants federal courts jurisdiction over actions arising under federal patent law. *Id.* at 807, 108 S.Ct. 2166. If jurisdiction was premised upon § 1338, the Federal Circuit Court of Appeals had jurisdiction over the appeal. *Id.* at 807, 108 S.Ct. 2166; 28 U.S.C. § 1295(a)(1) (granting the Federal Circuit jurisdiction over appeals from district courts whose jurisdiction was based on § 1338). If the district court's jurisdiction did not rest on § 1338, the Seventh Circuit was the proper appellate forum.

The case thus turned on the construction of the "arising under" language of § 1338, which provides in relevant part, "The district courts shall have original jurisdiction of any civil action arising under an Act of Congress relating to patents ... copyrights and trademarks." The question was not if the federal district court had jurisdiction vis-á-vis the state court, as the district court's jurisdiction was premised on the Sherman Act claims; however, the Supreme Court noted that the "arising under" language in § 1338 is nearly identical to provisions in other jurisdictional statutes, namely § 1331, and the same analysis applies to the interpretation of both statutes:

A district court's federal-question jurisdiction ... extends over "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law," in that "federal law is a necessary element of one of the

well-pleaded … claims." Linguistic consistency, to which we have historically adhered, demands that § 1338(a) jurisdiction likewise extend only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.

*Id.* at 808–09, 108 S.Ct. 2166 (internal citations omitted). Accordingly, the *Christianson* Court's analysis as to the patent law issues is instructive to the application of the well-pleaded complaint rule to the federal question issue raised in the present case.

In *Christianson,* the district court's subject matter jurisdiction did not depend on the state law claims, and the face of the complaint did not reference patent law,[3] so the Court proceeded to consider "whether patent law 'is a necessary element of one of the well-pleaded [antitrust] claims.'" *Id.* at 809, 108 S.Ct. 2166 (quoting *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 813, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)). Again, the Court took its cue from the familiar § 1331 standard, searching only the face of the complaint, without reference to any anticipated defenses. *Id.* (citing *Franchise Tax Bd.,* 463 U.S. at 10, 103 S.Ct. 2841).

Ultimately, the Court relied on the principle enunciated in *Franchise Tax Board* that if the face of the well-pleaded complaint discloses "reasons completely unrelated to the provisions and purposes of [the federal statute] why the [plaintiff] may or may not be entitled to the relief it seeks," then the claim does not "arise under" that federal statute. *Franchise Tax Bd.,* 463 U.S. at 26, 103 S.Ct. 2841. The Court further noted that the well-pleaded complaint rule concerns claims, not theories. *Christianson,* 486 U.S. at 810, 108 S.Ct. 2166. Accordingly, the Court held that when one claim is supported by several theories, and federal law forms an essential element of only one theory, the additional nonfederal theories are such "reasons completely unrelated to the provisions of [the federal statute]" as to deprive the Court of jurisdiction under the well-pleaded complaint rule. *Id.* at 811, 108 S.Ct. 2166 (holding that an entire claim does not arise under federal law "just because an element that is essential to a particular theory might be governed by federal [ ] law").

The Court found that even assuming the validity of Colt's patents was an essential element of at least one of the theories of the antitrust claims and not an anticipated defense, none of the claims could be said to "arise under" federal patent law because the plaintiff's right to relief did not necessarily depend on resolution of a substantial question of patent law. *Id.* at 811, 108 S.Ct. 2166. The Court examined the face of the complaint and found the theory relied upon by the plaintiff, under which he ultimately prevailed in the district court, was only one of several theories in the complaint that would support the antitrust claim. *Id.* at 811–12, 108 S.Ct. 2166. Accordingly, even though a particular theory under the antitrust claims turned on a substantial question of federal patent law,

---

3. The Court noted, however, that a claim lacking reference to federal patent law may still be said to "arise under" patent law under the same principles that a state law claim may be said to arise under federal law. *Christianson,* 486 U.S. at 809 n. 3, 108 S.Ct. 2166. One such principle is that a plaintiff cannot avoid removal by omitting from the complaint necessary federal questions. *Id.* (citing *Franchise Tax Bd.,* 463 U.S. at 22, 103 S.Ct. 2841). Whether state law claims necessarily involve federal questions is an issue of complete preemption, discussed in section I.B., below.

the plaintiff may also have prevailed on the antitrust claim for reasons wholly unrelated to patent law. *Id.* The claim did not "arise under" federal patent law and the district court's jurisdiction was not based in whole or in part on § 1338; therefore, the Federal Circuit Court of Appeals did not have appellate jurisdiction. *Id.* at 811–13, 108 S.Ct. 2166.

Although not developed in this Circuit, the Fourth Circuit has applied the *Christianson* rationale to a series of civil cases construing § 1331. In *Mulcahey v. Columbia Organic Chemicals Co.,* the plaintiff landowners asserted state-law tort claims against the defendant chemical company, alleging that it negligently discharged hazardous chemicals near the plaintiff's property. *Mulcahey,* 29 F.3d at 149. An alternative theory of the plaintiff's negligence claim was negligence per se. *Id.* at 150. In conjunction with that claim, the plaintiff referenced several federal environmental laws that provided for private rights of action. *Id.* The district court concluded that the presence of a private right of action under a federal statute conferred jurisdiction upon the federal court, despite the nonessential nature of the federal issue. *Id.* (relying on *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. at 804, 106 S.Ct. 3229).

The court of appeals disagreed, holding that the presence of a private right of action under a federal statute alone does not establish jurisdiction. *Id.* at 152 (explaining that the district court's construction of *Merrell Dow* was too narrow, as that case held only that a claim does not raise a substantial question of federal law when the claim references a federal statute that does not provide a private right of action and its violation is alleged as part of a state law cause of action); *see also Merrell Dow,* 478 U.S. at 817, 106 S.Ct. 3229.

The district court still must satisfy itself that Congress intended the federal courts to hear a case based on state law but incorporating a violation of federal law. *Id.*

In determining if the negligence claim arose under federal law, the court looked to *Christianson.* "*Christianson* teaches us that, if a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist." [4] *Id.* (citing *Christianson,* 486 U.S. at 810, 108 S.Ct. 2166). Plaintiffs' alternative theory of negligence per se was not essential to recovery on the negligence claim, so the federal court did not have jurisdiction. *Id.* at 154 (noting also that the plaintiffs were procedurally or substantively barred from proceeding under the federal statutes); *see also Polcha v. AT & T Nassau Metals Corp.,* 837 F.Supp. 94 (M.D.Pa.1993) (where negligence per se is only one of plaintiff's theories for recovery, there is not a substantial federal issue under *Christianson* ).

In *Dixon v. Coburg Dairy,* the Fourth Circuit again applied the *Christianson* rationale to circumstances where the plaintiff alleged several theories of recovery. The plaintiff sued in state court, alleging violation of a state statute that prohibited termination of employment in retaliation for an employee's exercise of state or federal constitutional rights. *Dixon,* 369 F.3d 811, 814–15 (4th Cir.2004). The defendant removed the case, asserting that the district court had original jurisdiction because the case turned on a substantial question of federal law, in that the complaint referred to the First Amendment. *Id.* at 815. The court held that "in the absence of another jurisdictional ground, a defendant seeking

---

**4.** The Fourth Circuit may have adopted an expansive view of *Christianson,* but this Court need not be equally expansive to resolve the issues herein.

to remove a case in which state law creates the plaintiff's cause of action must establish two things: (1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial." *Id.* at 816.

The court found three theories in the complaint under which the plaintiff could recover: that he was fired because he exercised his rights under the First Amendment, because he exercised his rights under the state constitution, or because he held unpopular political beliefs. *Id.* at 818. Only one of these theories involved the resolution of a question of federal law; therefore, the plaintiff could obtain the relief he sought without prevailing on the federal issue. *Id.* Because the plaintiff's success on the claim did not depend on a question of federal law, the district court did not have jurisdiction. *Id.; see also Bryan v. BellSouth Comm. Inc.*, 377 F.3d 424 n. 10 (4th Cir.2004) (court must find alternative theories for claim on the face of the complaint, not through speculation or conjecture); *Meierer v. St. John's Reg'l Health Ctr.*, 2005 WL 1076122 (W.D.Mo., May 5, 2005) (citing *Dixon* and *Christianson*, finding no federal jurisdiction over case involving a claim for violation of state statute where statute mentioned federal law but proof of violation did not require application of federal law).

■ The face of EFCO's state court petition clearly delineates three theories for the fiduciary duty EFCO claims ABI owed its members. Under the reasoning of *Christianson*, as applied to the circumstances of § 1331 in the present case, "a claim supported by alternative theories in the complaint may not form the basis for [ ] jurisdiction unless [federal] law is essential to each of those theories." *Christianson*, 486 U.S. at 810, 108 S.Ct. 2166 (internal citations omitted). One of the three theories of the fiduciary duty claim may require reference to or resolution of federal law, but ABI has not demonstrated that federal law is essential to the other two theories. EFCO may obtain the relief it seeks—a judgment that the class is entitled to the proceeds—without proving that ABI owed an ERISA fiduciary duty to transfer the proceeds.

Because ERISA is a statute which completely preempts state law, the Court cannot complete its analysis without a discussion of the federal statute. The issue of complete preemption arises separately from, and as an exception to, the well-pleaded complaint rule, however, and is addressed separately below. The well-pleaded complaint rule requires the Court to examine only the face of the complaint and in the present case, that is insufficient to confer removal jurisdiction.[5]

---

**5.** In *Broder v. Cablevision Systems Corp.*, the Second Circuit noted that "what plaintiff presents as one 'count' may be understood to encompass more than one 'claim.'" *Broder*, 418 F.3d 187, 194 (2d Cir.2005). The court determined that what was postured as one breach of contract claim actually included two distinct claims for breaches of two different provisions of law incorporated into the contract. *Id.* at 194. These included a claim for failure to provide a uniform rate under a federal statute regulating cable rates, and a claim for failure to provide adequate notice under a state consumer protection statute. *Id.* at 194–95.

The court held "[o]ne of the key characteristics of a mere 'theory' as opposed to a distinct claim, is that a plaintiff may obtain the relief he seeks without prevailing on it" *Id.* at 195 (citing *Christianson*, 486 U.S. at 810–13, 108 S.Ct. 2166). In *Christianson*, the court found the antitrust "count" included two claims under different sections of the Sherman Act, but the distinction did not affect the outcome, because both of the claims presented alternate, nonpatent theories which

**996**

## B. Complete Preemption

██ Federal preemption often arises as a defense to a plaintiff's state-law claim and does not change federal court jurisdiction when so postured. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Complete preemption, however, is more than a defense. The Supreme Court has determined that Congress imbued some statutes with an extraordinary preemptive force that converts an ordinary state law claim into a federal claim for purposes of the well-pleaded complaint rule. *Id.* at 63–64, 107 S.Ct. 1542. "As such, 'complete preemption' of a state-law cause of action provides a basis for removal of an action to federal court." *Chapman v. Lab One*, 390 F.3d 620, 625 (8th Cir.2004). Because the above analysis demonstrates that the well-pleaded complaint rule alone does not provide the Court with subject matter jurisdiction, the case should be remanded to the Iowa District Court for Polk County if the complete preemption exception does not apply.

ABI correctly states that if at least one of EFCO's claims is completely preempted by ERISA, then removal of the entire case is proper. *See Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir.1996) ("Only those claims that fall within the preemptive scope of the particular statute, or treaty, are considered to make out federal questions, but the presence of even one federal claim gives the defendant the right to remove the entire case to federal court") (internal citations omitted); *accord Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841. Accordingly, ABI concentrates its argument in this regard on the complete preemption of EFCO's claim for breach of fiduciary duty.

██ When a claim "relates to any employee benefit plan," under ERISA's preemption provision, 29 U.S.C. § 1144(a), "and the claim seeks to recover benefits due or enforce rights under the terms of a plan, 29 U.S.C. § 1 132(a), such that the exclusive cause of action is under federal law," then the entire case is removable. *Neumann v. AT & T Comm'n, Inc.*, 376 F.3d 773, 779–80 (8th Cir.2004) (internal citations omitted). It is ABI's burden to establish federal subject matter jurisdiction. *Green*, 279 F.3d at 596. ABI asserts that it has met this burden because the state law claims alleged in EFCO's petition relate to an employee benefit plan under § 1144(a) and allege claims under § 1132(a).

eliminated § 1338 jurisdiction. *Christianson*, 486 U.S. at 810, 108 S.Ct. 2166. In *Broder*, this distinction was material because the plaintiff sought a declaratory judgment that defendant violated the federal statute. *Broder*, 418 F.3d at 195. Therefore, the requested relief was specifically tied to success on the federal issue and not merely an alternative theory. *Id.*

In the present case, like *Christianson*, this distinction is immaterial because EFCO may obtain the relief it seeks without prevailing on the ERISA issue. EFCO requests class certification, an award of attorney fees and costs, a judgment that the proceeds belong to the class, and an order retaining jurisdiction to determine how to divide the proceeds. If it is determined that this case is within the complete preemptive power of ERISA, then feder-al legal and procedural issues will necessarily be implicated in granting any of the above relief. However, for purposes of the well-pleaded complaint rule, all of the requested relief may be granted without resort to federal law. EFCO states that its right to the proceeds would be subject to any ERISA rights of class members' employees, and the division of the proceeds would include "any amounts that subsequently may be determined to be ERISA plan assets." The Court finds this language does not proclaim an essential element of federal law but merely acknowledges the presence of a potential federal issue whose applicability has yet to be determined. Thus, the Court necessarily resolves the current jurisdictional issues without regard to the possibility a substantial federal question may still lurk in the future.

ABI claims EFCO's second claim "relates to an employee benefit plan" under 29 U.S.C. § 1144(a) because the existence of the EFCO plan is a critical factor in establishing the extent of ABI's liability to EFCO, and any damages would be computed by reference to the plan. Further, ABI asserts that EFCO's claim could be properly characterized under either of two subsections of 29 U.S.C. § 1132(a).

ABI argues that EFCO's claim arises under § 1132(a)(2) because EFCO is acting as a fiduciary for the EFCO plans in asserting a claim of breach of fiduciary duty against ABI, another fiduciary of the EFCO plan. 29 U.S.C. § 1132(a)(2) (authorizing civil actions brought by a "fiduciary for appropriate relief under section 409" (section 409 refers to 29 U.S.C. § 1109, which addresses liability for breach of fiduciary duty)). In addition, ABI claims EFCO's claims are brought on behalf of the EFCO plan and not its own behalf because EFCO seeks rights to the proceeds, which are an ERISA plan asset.[6]

ABI also argues EFCO states a claim under § 1132(a)(3). Section 1132(a)(3)(A) permits an action by a fiduciary to enjoin any practice which violates ERISA or the plan terms. ABI states that EFCO has failed to plead the prerequisites for injunctive relief, but asserts an injunction would be required to grant EFCO the relief it seeks—recovery of an ERISA plan asset in the hands of ABI. Finally, section 1132(a)(3)(B) permits a fiduciary to obtain equitable relief to redress an ERISA violation or enforce the plan terms. ABI claims EFCO seeks to restore to itself particular funds that are currently in ABI's possession, a remedy typically available in equity.

To reach its point, ABI assumes several facts that have not been satisfactorily demonstrated to the Court: that the ABI program is an ERISA plan, that the proceeds are an ERISA plan asset, and that EFCO is acting in its capacity as a fiduciary of the "EFCO Plan" and not on its own behalf. See *Workforce Dev., Inc. v. Corp. Benefit Servs. of Am.*, 316 F.Supp.2d 854, 858 (D.Minn.2004) ("To determine whether [ ] claims are completely preempted, the Court must determine whether (1) [plaintiff] has standing to bring a claim; (2) the subject matter of the state law claim falls within the scope of ERISA; and (3) the claim can be resolved without reference to the plan language"). Further complicating this issue is that EFCO presents its arguments around "the plan" as the ABI Program, which appears to refer to the group insurance contract issued by Principal to ABI. ABI, however, begins referring to the plan in question as "the EFCO Plan," which appears to refer to the individual policy documents Principal issued directly to EFCO. In addition, ABI asserts that EFCO is acting as a fiduciary and not on its own behalf because the proceeds are an ERISA plan asset, but, as previously noted, that has not been established in this record. EFCO does not purport to be acting on behalf of any "EFCO Plan," and in fact, it specifically denies that it represents any interest of its employees.

EFCO neither admits nor denies ERISA's applicability, but instead argues that the Court can grant the relief it seeks without resorting to ERISA. EFCO admits only that if ERISA is applicable, it will form another basis for the existing breach of fiduciary duty claim and may allow the employees of ABI member com-

---

**6.** ABI alleges the proceeds could be ERISA plan assets in three possible ways: (1) if EFCO Plan participants paid premiums, (2) if EFCO paid all premiums and there are proceeds in excess of premiums paid, and (3) if any employees paid COBRA premiums.

panies to receive part of the proceeds, should the proceeds be distributed to EFCO.

 Where "federal subject matter jurisdiction is based on ERISA, but the evidence fails to establish the existence of an ERISA plan, the claim must be dismissed for lack of subject matter jurisdiction." *Kulinski v. Medtronic Bio–Medicus, Inc.,* 21 F.3d 254, 256 (8th Cir.1994) (explaining that while other courts of appeals treat the existence of an ERISA plan as a question on the merits, the Eighth Circuit maintains the existence of an ERISA plan is a jurisdictional prerequisite), *abrogated on other grounds by Ky. Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329, 341, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003). The existence of an ERISA plan is a mixed question of fact and law and is reviewed de novo. *Id.* (noting that in other circuits, where it is a question of fact only, the decision is reviewed for clear error).

ERISA applies to any employee benefit plan that is established or maintained "by any employer engaged in commerce ... by any employee organization [ ] representing employees engaged in commerce ... or by both." 29 U.S.C. § 1003(a). An "employee welfare benefit plan" is an "employee benefit plan" that is established or maintained by an employer or employee organization "for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise," certain benefits, including medical care, sickness, disability, death, and unemployment benefits. 29 U.S.C. § 1002(a).

 "An employer's decision to extend benefits does not constitute, in and of itself, the establishment of an ERISA plan." *Kulinski,* 21 F.3d at 256. The ERISA status of a plan has been determined by "whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits." *Id.* at 257; *accord Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). That test has been used by courts in situations involving various types of severance pay plans, where group insurance policies were not implicated. *See Kulinski,* 21 F.3d at 258; *Emmenegger v. Bull Moose Tube Co.,* 197 F.3d 929, 935 (8th Cir.1999).

 The Eighth Circuit has held that an ERISA plan is established "if from the surrounding circumstances, a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Northwest Airlines, Inc. v. Fed. Ins. Co.,* 32 F.3d 349 (8th Cir.1994). District courts have used this guidance to determine ERISA plan status when the court is provided the plan documents. *Antolik v. Saks, Inc.,* 278 F.Supp.2d 997, 1001–02 (S.D.Iowa 2003) ("Before the Court may determine if Plaintiffs' claims are preempted by ERISA, the Court must first determine whether the Plan document ... established an ERISA benefits plan."); *Burkett v. Sun Life Assurance Co.,* 958 F.Supp. 432, 434 (E.D.Ark.1997) (the plaintiff employee sought disability benefits, the policy identified her employer as the policyholder). No plan documents are a part of this record.[7]

 The ERISA status of a plan or fiduciary is within the concurrent jurisdiction of the state and federal courts. *Int'l Assoc. of Entrepreneurs of Am. v. Angoff,* 58 F.3d 1266, 1269 (8th Cir.1995). In *Angoff,* the plaintiff was a trade association that provided insurance benefit services to the employers that comprised its member-

---

7. Nor were plan documents a part of the record in the prior case in this Court, No. 4:04–cv–40270. Thus, the Court has only those portions quoted or described in pleadings and briefs.

ship. *Id.* at 1268. The plaintiff filed a declaratory judgment action in federal district court after the defendant, the director of the state insurance department, filed an action in state court to stop the plaintiff from selling insurance without a license. *Id.* The plaintiff sought injunctive relief under 29 U.S.C. § 1132(a)(3) as an ERISA fiduciary seeking to halt practices that violate ERISA. *Id.* at 1269.

The court noted that 29 U.S.C. § 1132(e)(1) provides that only federal courts can issue such an injunction, but ultimately found that the appeal failed "because no court has yet decided whether IAEA is an ERISA plan as it alleges." *Id.* The court held that the state and federal courts have concurrent jurisdiction to determine ERISA plan status, and remanded the case for an entry of stay pending the outcome of the state proceeding. *Id.* The court noted that the plaintiff's allegation that it was an ERISA fiduciary could be asserted as a defense in the state court proceeding. *Id.* at 1270.

■ The health and disability insurance plans in question here appear to be of the sort of "employee welfare benefit plans that, 'through the purchase of insurance or otherwise,' provide[s] medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability or death." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (citing 29 U.S.C. § 1002(1)). In addition, the present case does not present the sort of factual question regarding plan existence that courts have struggled with in the severance pay area, nor is it the typical ERISA case where an employee-beneficiary seeks payment of benefits allegedly due under a plan sponsored by his or her employer.

However, the Court is properly hesitant to determine ERISA plan status without reference to the plan documents themselves, and is even more reluctant to address the issues of ERISA fiduciary status under the present record. In the previous case, the parties all but admitted that the determination of ERISA's applicability will be tantamount to a determination of the merits. Mindful of that situation, the concurrent jurisdiction of the state court, and the obligation to resolve doubts against accepting removal jurisdiction, the Court finds it is appropriate to remand the action to state court. *See Transit Cas. Co. v. Certain Underwriters at Lloyd's of London,* 119 F.3d 619, 625 (8th Cir.1997) (resolve doubts against accepting removal jurisdiction); *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (presumption against federal jurisdiction).

## CONCLUSION

Should the state court find that this case involves an ERISA plan and EFCO has standing to pursue its claim, the parties may be required to return to federal court to obtain the necessary relief. The Court is cognizant of the protracted procedural history and the difficulty in determining the appropriate forum occasioned by the unique complexity of this case. The Court has struggled with the matter in the hope of avoiding still more procedural and jurisdictional complexities that may lie ahead; but, at bottom, the Court is compelled to resolve the current issue on the current record. While some facet of the ABI Program may well be an ERISA plan, the record presently before the Court leaves some doubt, and the Court is obligated to resolve that doubt against accepting jurisdiction. Accordingly, EFCO's Motion to Remand (Clerk's No. 3) must be **granted.** This case is remanded to the Iowa District Court for Polk County.

**IT IS SO ORDERED.**